**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PAMELA A. COUDEN, et al., | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 03-369-MPT |
| SCOTT DUFFEY, et al., | : |

## MEMORANDUM ORDER

**I.   INTRODUCTION**

Plaintiff Paula Couden ("Couden") and six of her children filed a civil rights and tort action against defendants Scott Duffey ("Agent Duffey"), James C. Armstrong ("Officer Armstrong"), Jay Freebery ("Officer Freebery"), Liam Sullivan ("Officer Sullivan"), New Castle County, the New Castle County Department of Police, the City of Wilmington, the City of Wilmington Department of Police, two unknown agents of the Federal Bureau of Investigation, and the United States of America.[1]  The suit arose from a series of nighttime interactions with plaintiffs and the individual defendants at the Couden home in connection with those defendants' surveillance of a different house near the Couden residence.  Among plaintiffs' claims was an allegation that Officer Armstrong's conduct that night constituted an unconstitutional seizure of Couden and four of her children under the Fourth Amendment of the United States Constitution while they were in their vehicle parked in the driveway of their home.  Plaintiffs also brought a claim against Agent Duffey as a federal official under the United States Supreme

---

[1] *Couden v. Duffey*, 305 F. Supp. 2d 379, 380-81 (D. Del. 2004).

1

Court's holding in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,[2] alleging violation of their Fourth Amendment rights for which they seek attorneys fees and costs if they prevail on that claim.

On February, 18, 2004, this court granted summary judgment to all defendants on all of the asserted claims.[3] On May 1, 2006, a divided panel of the United States Court of Appeals for the Third Circuit reversed in part and affirmed in part the February 18, 2004 order, and remanded the action for further proceedings.[4] The referenced Fourth Amendment claims against Officer Armstrong and Agent Duffey were two of the claims the Third Circuit determined were erroneously granted summary judgment.[5]

The case is scheduled to be tried to a jury beginning on December 5, 2011. A pretrial conference was held on November 18, 2011. At the pretrial conference, defendants again raised the issue of whether Officer Armstrong's actions constituted a seizure under Supreme Court and Third Circuit precedent. The issue of whether plaintiffs could recover attorneys' fees and costs related to their *Bivens* claim against Agent Duffey, should they prevail on that claim, was also raised at that conference.

## II. BACKGROUND[6]

> On April 12, 2001, members of the Delaware Joint Violent Crime Fugitive Task Force set up surveillance near 7 Sanford Drive in Newark, Delaware, based on a tip that a fugitive wanted by the New Castle County Police Department for drug and weapons-related charges might be staying at that address. The Task Force was made up of both state and federal

---

[2] 403 U.S. 388 (1971).
[3] *Couden*, 305 F. Supp. 2d at 393.
[4] *Couden v. Duffy*, 446 F.3d 483, 501 (3d Cir. 2006).
[5] *Id.* at 493-495, 501.
[6] This background is taken from what the Third Circuit described as the "relevant facts" of the case, to the extent that they relate to the Fourth Amendment unlawful seizure claim against Officer Armstrong.

2

officers, and the members at the scene were . . . Scott Duff[e]y of the Federal Bureau of Investigation (FBI), James Armstrong and Jay Freebery of the New Castle County Police Department, and Liam Sullivan of the Wilmington Police Department. The members of the Task Force were parked in two unmarked vehicles and wore plain clothes.

At about 8:30 p.m., Pamela Couden drove up to her home at 3 Sanford Drive, two houses away from 7 Sanford Drive, with five of her children—. . . Micah, age 5, Luke, 7, Jordan, 9, Nicholas, 11, and Adam, 14. Couden's daughter, 17 year-old Tiffany, was inside the residence. Couden parked on the street and kept her lights on and the engine running while Adam exited the car. According to Couden, she was waiting for Adam to put his skateboard in the garage and summon his sister, and the family then planned to go out to dinner. Adam walked into the garage, where he put down his skateboard and looked through a window from the garage into the house. He saw Tiffany through the window and started to leave the garage. At that time, he saw a man charging towards him with a gun. Frightened, he slammed the garage door shut, remaining inside.

Meanwhile, Pamela Couden pulled her car into the driveway, put her high beams on, and blew the horn to summon Adam. She then saw an unknown man—later determined to be Officer Armstrong—walking towards her with a gun. When he reached the car he pointed the gun at Pamela Couden and pulled the door handle without displaying a badge or identifying himself in any way. Not realizing that the man was an officer, Couden tried to escape. She pressed the gas pedal, swerved to avoid the garage, and swerved again to avoid a tree. She then saw a second man—later determined to be Officer Freebery—running towards the car pointing a gun at her and holding a flashlight above his head. As Couden drove past Officer Freebery, he threw the flashlight at a window of the car, shattering the glass. The children screamed from the back seat of the car, and Couden believed that one of them had been shot. Couden continued driving to a neighbor's house and drove over the curb, breaking the car's steering column. She ran into the neighbor's house and called 9–1–1.[7]

The Third Circuit stated that "[c]onsidering the facts in the light most favorable to the plaintiffs, Armstrong's conduct gave rise to an unconstitutional seizure under the Fourth Amendment when he approached the Couden vehicle with gun drawn."[8]

---

[7] *Couden*, 446 F.3d at 489-90.
[8] *Id.* at 493.

## III. DISCUSSION

### 1. Plaintiffs' Fourth Amendment Claim Against Officer Armstrong

In *United States v. Smith*,[9] the Third Circuit explained the requirements for finding unreasonable searches and seizures:

> The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. "The Fourth Amendment's requirement that searches and seizures be founded upon an objective justification, governs all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Mendenhall*, 446 U.S. 544, 551, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980) (internal quotation marks omitted). But not every interaction between a police officer and a citizen is protected by the Fourth Amendment. An encounter "will not trigger Fourth Amendment scrutiny unless it loses its consensual nature . . . . '***Only when the officer, by means of physical force or show of authority***, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.'" *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991) (quoting *Terry [v. Ohio]*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868); *see also California v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991). "Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards." *Mendenhall*, 446 U.S. at 553, 100 S. Ct. 1870. Yet "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002). In fact, "[e]ven when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, [and] ask for identification" without running afoul of the Fourth Amendment's prohibitions. *Id.* at 201, 122 S. Ct. 2105.
>
> Whether an encounter with a police officer constitutes a search and/or seizure under the Fourth Amendment requires consideration of "all the circumstances surrounding the encounter." *Bostick*, 501 U.S. at 439, 111 S. Ct. 2382. Any inquiry into an alleged seizure must begin by determining when the seizure occurred. *See United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008) ("The initial step of a Fourth Amendment suppression analysis requires us to determine the timing of the seizure."). The timing of the seizure is significant—if the seizure occurred after

---

[9] 575 F.3d 308 (3d Cir. 2009).

4

suspicious behavior such as flight, this factors into our analysis of whether there was reasonable suspicion to justify the seizure. But if the seizure occurred before the flight, as the District Court found here, then the flight "plays no role in the reasonable suspicion analysis." *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006). As such, any seizure inquiry has two steps: Was there in fact a seizure? If so, was that seizure reasonable?

The Supreme Court provides us with guidance. In *Mendenhall*, the Court listed several factors indicative of a seizure: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. at 554, 100 S. Ct. 1870. In *Hodari D.*, the Court provided further clarification, holding that the *Mendenhall* test was "a necessary, but not a sufficient condition for seizure—or, more precisely, for seizure effected through a 'show of authority.'" 499 U.S. at 628, 111 S. Ct. 1547 (emphases omitted). In *Hodari D.*, the Court held that a seizure does not occur when the subject does not yield to a show of authority. 499 U.S. at 626, 111 S. Ct. 1547. To be clear, a seizure "requires either physical force . . . or, where that is absent, submission to the assertion of authority." *Id.* **The simple act of an assertion of authority by an officer is insufficient to transform an encounter into a seizure without actual submission on the part of the person allegedly seized**.

Furthermore, "[w]hen the actions of the police do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence, there needs to be some test for telling when a seizure occurs in response to authority, and when it does not." *Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 2405, 168 L. Ed. 2d 132 (2007) (discussing the application of the *Mendenhall* test after *Hodari D.*). "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Hodari D.*, 499 U.S. at 628, 111 S. Ct. 1547.[10]

Again, "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has

---

[10] *Id.* at 312-13 (emphasis added).

5

occurred."[11] Here, the Third Circuit did not indicate physical force was a basis for its ultimate conclusion that a seizure occurred and precedent from this Circuit establishes that Officer Armstrong did not restrain the liberty of Couden and her children by means of physical force when he drew his gun and pointed it at her.[12] The Third Circuit also determined, however, that "because Couden alleges that Officer Armstrong never declared himself to be a police officer and never displayed a badge . . . [t]here was . . . **no 'show of authority'** by Officer Armstrong, and Couden could not have been expected to **'submit.'**"[13] Nevertheless, the Third Circuit determined that:

> Considering the facts in the light most favorable to the plaintiffs, Armstrong's conduct gave rise to an unconstitutional seizure under the Fourth Amendment when he approached the Couden vehicle with gun drawn. . . . Here, Officer Armstrong clearly restrained the freedom of Couden and her children when he approached them, pointed a gun at Couden, and tried to open one of the doors to the car.[14]

The court concluded that "[u]nder *these circumstances*[, where there was no show of authority to which Couden could have been expected to submit], it would be unreasonable to find that Couden's flight negated the seizure."[15] The court suggested, however, that the conclusion could have been different had Officer Armstrong identified himself as a police officer when it noted that "'if the police make a show of authority and

---

[11] *Id.* at 312 (quotation marks and citation omitted).
[12] *See, e.g., United States v. Waterman*, 569 F.3d 144, 146 (3d Cir. 2009) (Rendell, J.) ("Here, there was no application of physical force. The police drew their guns in a 'show of authority.' While this act definitely constituted a **display of force**, we conclude that it fell short of the **physical force** required under *Hodari D.*") (emphasis added). Curiously, in support of that conclusion, the Third Circuit cited its decision in this case with the parenthetical "no 'seizure' when defendant flees after police draw their weapons." *Id.* at 146 n.5 (citing *Couden*, 446 F.3d at 493-94). Other cases, from this and other Circuits, were also cited as support for the conclusion that drawing guns was not the physical force required under *Hodari D. Id.*
[13] *Couden*, 446 F.3d at 494 (emphasis added).
[14] *Id.* at 493-94.
[15] *Id.* at 494 (emphasis added).

6

the suspect does not submit, there is no seizure.'"[16] Here, there is a question of fact as to whether Officer Armstrong did so identify himself.[17]

The relevant facts, as recited by the Third Circuit, indicate that, if Officer Armstrong *had* identified himself as a police officer in a show of authority, Couden did not submit to that authority because she immediately tried to escape in her vehicle when Officer Armstrong reached the car.[18] If the jury determines Officer Armstrong identified himself to Couden, her failure to submit to his show of authority likely means no seizure occurred.[19] Because this fact is disputed, the question of whether Officer Armstrong identified himself as a police officer when he approached Couden's vehicle must be resolved by the jury.

---

[16] *Id.* (quoting *United States v. Valentine*, 232 F.3d 350, 358 (3d Cir. 2000) & citing *id.* at 353, 359 (holding that no seizure occurred where an officer told Valentine to approach and to put his hands on the squad car, and Valentine responded "Who, me?" before attempting to run away)).

[17] *Id.* at 503 (Weis, J. dissenting) ("According to Pamela, he approached the car with a gun, pointed it toward her head and tried to open the door. She alleges that Armstrong did not identify himself *although this is contradicted by Officer Freebery*.") (emphasis added); *Couden v. Duffey*, 305 F. Supp. 2d 379, 382 (D. Del. 2004) ("Officer Armstrong claims that he approached the vehicle that dropped off Adam, whom he suspected to be a burglar, and, with his badge in his extended left hand and with his weapon drawn at his right side, he identified himself as a police officer.").

[18] *Couden*, 446 F.3d at 490 ("When [Officer Armstrong] reached the car he pointed the gun at Pamela Couden and pulled the door handle without displaying a badge or identifying himself in any other way. Not realizing that the man was an officer, *Couden tried to escape. She pressed the gas pedal, swerved to avoid the garage, and swerved again to avoid a tree.*") (emphasis added).

[19] *See Hodari D.*, 499 U.S. at 626 n.2 ("[N]either usage nor common-law tradition makes an *attempted* seizure a seizure.") (emphasis in original); *County of Sacramento v. Lewis*, 523 U.S. 833, 845 n.7 (1998) ("Attempted seizures of a person are beyond the scope of the Fourth Amendment."); *Valentine*, 232 F.3d at 358 ("[I]f the police make a show of authority, and the suspect does not submit, there is no seizure.") (citing *Hodari D.*, 499 U.S. at 626; *United States v. $32,400 in United States Currency*, 82 F.3d 135, 139 (7th Cir. 1996)); *United States v. Waterman*, 569 F.3d 144, 145-46 (3d Cir. 2009) ("With respect to 'submission,' the [Supreme] Court noted that compliance with police orders to stop should be encouraged. This would seem to require something more than a *momentary pause* or mere inaction.") (emphasis added); *id.* at 146 n.3 ("Although *Hodari D.* involved a suspect engaged in headlong flight, we have since examined acts of defiance that are less overt. Our precedents suggest 'submission' under *Hodari D.* requires, at minimum, that a suspect *manifest compliance* with police orders.") (emphasis added) (citations omitted); *Couden*, 446 F.3d at 504 (Weis, J. dissenting) ("'If [an individual] manifests his belief that he has not been seized by attempting to flee, he has not submitted to a show of authority and, therefore, has not been seized.'") (quoting *U.S. v. Smith*, 423 F.3d 25, 31 (1st Cir. 2005)).

## 2. Attorneys' Fees and Costs for Plaintiffs' *Bivens* Claim

Plaintiffs also brought a *Bivens* claim against Agent Duffey for which they seek attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), and costs under 28 U.S.C. § 2412(a)(1), if they prevail on that claim. Section 2412(d)(1)(A) of the EAJA recites:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or *against the United States* in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.[20]

Section 2412(a)(1) of the EAJA recites:

> Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her *official capacity* in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.[21]

The "United States" is defined by the EAJA for the purposes of subsection (d) as including "any agency and any official of the United States acting in his or her *official capacity*."[22] Because plaintiffs' *Bivens* claim against Agent Duffey is a claim against him in his individual capacity, an award of attorneys' fees and costs is not recoverable under

---

[20] 28 U.S.C. § 2412(d)(1)(A) (emphasis added).
[21] 28 U.S.C. § 2412(a)(1) (emphasis added).
[22] 28 U.S.C. § 2412(d)(2)(C) (emphasis added).

8

§ 2412 should they prevail on their claim against him.[23]

December 2, 2011  /s/ Mary Pat Thynge
Wilmington, Delaware  Thynge, U.S. Magistrate Judge

---

[23] *See Kreines v. United States*, 33 F.3d 1105, 1107 (9th Cir. 1994) (The court rejected plaintiff's argument that "even though a *Bivens* claim is brought against federal agents in their *individual* capacities, . . . the agents must have been *acting* in their official capacities within the meaning of § 2412(d) . . . . [W]hile the federal officers acted under color of federal law when executing the search warrant, they are liable under *Bivens* because their actions *exceeded the scope of their legal authority*. Thus, it cannot be said that the officers acted as agents of the United States, within their official capacity, when they violated Kreines' rights.") (emphasis in original); *id.* at 1109 ("[W]e hold that § 2412(d) does not authorize the courts to award attorney's fees against the United States in *Bivens* actions. Federal agents are sued in their individual capacities rather than in their official capacities in *Bivens* actions; thus, a *Bivens* action is not a 'civil action . . . against the United States' under § 2412(d)."); *GasPlus, L.L.C. v. U.S. Dept. of Interior*, 593 F. Supp. 2d 80, 88-89 (D.D.C. 2009) ("*Bivens* actions involve claims against federal officials in their *individual capacities*. Accordingly, Subsection 2412(d)(1)(A) 'does not authorize the courts to award attorney's fees against the United States in *Bivens* actions.'") (emphasis in original) (quoting *Kreines*, 33 F.3d at 1109.); *id.* at 86 (Because [the individual defendants] were sued in their individual capacities under *Bivens*, the costs [plaintiff] incurred in suing them cannot be recovered under Subsection 2412(a)(1).") (citing *Kreines*, 33 F.3d at 1109; *see also San Jose Charter of the Hell's Angels Motorcycle Club v. City of San Jose*, No. CIV. 99-20022 SW, 1999 WL 1211672, at *17 (N.D. Cal. Dec. 6, 1999) (granting federal defendants' motion to strike plaintiff's request for attorneys's fees under the EAJA where plaintiffs "acknowledge[d] that[, pursuant to *Kreines*,] they cannot receive attorneys' fees under the EAJA from these defendants").

9