**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PAMELA A. COUDEN, et al., :<br>:<br>Plaintiffs, :<br>:<br>v. :<br>:<br>SCOTT DUFFEY, et al., : | Civil Action No. 03-369-MPT |

## **MEMORANDUM ORDER**

**I.    INTRODUCTION**

Plaintiff Paula Couden ("Couden") and six of her children filed a civil rights and tort action against four individual law enforcement personnel and several county and city entities, as well as, the United States of America.[1] The suit arose from a series of nighttime interactions with plaintiffs and the individual defendants at the Couden home in connection with those defendants' surveillance of a different house near the Couden residence. Among plaintiffs' claims was an allegation that the individual defendants' interaction that night with Couden's son, Adam, constituted an unconstitutional use of excessive force under the Fourth Amendment of the United States Constitution.

On February 18, 2004, this court granted summary judgment to all defendants on all of the asserted claims.[2] On May 1, 2006, a divided panel of the United States Court of Appeals for the Third Circuit reversed in part and affirmed in part the February 18, 2004 order, and remanded the action for further proceedings.[3] The referenced excessive force claim against the individual defendants was one of the claims the Third

---

[1] *Couden v. Duffey*, 305 F. Supp. 2d 379, 380-81 (D. Del. 2004).
[2] *Id.* At 393.
[3] *Couden v. Duffy*, 446 F.3d 483, 501 (3d Cir. 2006).

Circuit determined was erroneously granted summary judgment.[4]

This case is scheduled to be tried to a jury beginning on December 5, 2011. A pretrial conference was held on November 18, 2011. At the pretrial conference, plaintiff sought to amend the proposed pretrial order to add a Fourth Amendment unlawful seizure claim to Adam Couden's Fourth Amendment excessive force claim. At that time, defendants did not oppose that amendment. After review of the transcript of the pretrial conference, and the Third Circuit's May 1, 2006 opinion, defendants now argue that plaintiffs' "claim for unlawful seizure cannot lie."[5]

## II.   BACKGROUND[6]

> On April 12, 2001, members of the Delaware Joint Violent Crime Fugitive Task Force set up surveillance near 7 Sanford Drive in Newark, Delaware, based on a tip that a fugitive wanted by the New Castle County Police Department for drug and weapons-related charges might be staying at that address. The Task Force was made up of both state and federal officers, and the members at the scene were . . . Scott Duffy of the Federal Bureau of Investigation (FBI), James Armstrong and Jay Freebery of the New Castle County Police Department, and Liam Sullivan of the Wilmington Police Department. The members of the Task Force were parked in two unmarked vehicles and wore plain clothes.
>
> At about 8:30 p.m., Pamela Couden drove up to her home at 3 Sanford Drive, two houses away from 7 Sanford Drive, with five of her children—. . . Micah, age 5, Luke, 7, Jordan, 9, Nicholas, 11, and Adam, 14. Couden's daughter, 17 year-old Tiffany, was inside the residence. Couden parked on the street and kept her lights on and the engine running while Adam exited the car. According to Couden, she was waiting for Adam to put his skateboard in the garage and summon his sister, and the family then planned to go out to dinner. Adam walked into the garage, where he put down his skateboard and looked through a window from the garage into the house. He saw Tiffany through the window and started to

---

[4] *Id.* at 496-498, 501.
[5] D.I. 306 at 1.
[6] This background is taken from what the Third Circuit described as the "relevant facts" of the case.

leave the garage. At that time, he saw a man charging towards him with a gun. Frightened, he slammed the garage door shut, remaining inside.

     Meanwhile, Pamela Couden pulled her car into the driveway, put her high beams on, and blew the horn to summon Adam. She then saw an unknown man—later determined to be Officer Armstrong—walking towards her with a gun. When he reached the car he pointed the gun at Pamela Couden and pulled the door handle without displaying a badge or identifying himself in any way. Not realizing that the man was an officer, Couden tried to escape. She pressed the gas pedal, swerved to avoid the garage, and swerved again to avoid a tree. She then saw a second man—later determined to be Officer Freebery—running towards the car pointing a gun at her and holding a flashlight above his head. As Couden drove past Officer Freebery, he threw the flashlight at a window of the car, shattering the glass. The children screamed from the back seat of the car, and Couden believed that one of them had been shot. Couden continued driving to a neighbor's house and drove over the curb, breaking the car's steering column. She ran into the neighbor's house and called 9–1–1.

     From where he was standing inside the garage, Adam Couden heard his mother and brothers screaming "he's got a gun!" and then saw the family car drive across the yard with tires screeching. He then heard the sound of glass shattering.

     Tiffany testified that, from inside the house, she saw a man with a gun approach the sliding-glass rear door to the house. The man tried to open the door, and when he saw Tiffany, he showed her what she thought was a badge and demanded entry. Tiffany testified that the man entered the house, but she did not specify whether she let him in or whether he forced his way in. A second man followed the first man into the house, and told Tiffany that there was a robber in the house. One of the men proceeded down the hallway, yelling "Come out with your hands up!" A third man then entered and headed toward the garage, and Tiffany heard someone yell "we got him" from the area of the garage and kitchen. Two of the men brought Adam into the house from the garage and threw him on the floor, where four men participated in pushing his head down, pointing guns at him, and spraying him with mace. They then handcuffed him. Tiffany told the men that Adam was her brother, and they demanded a driver's license from Adam. Adam said that he was too young to have a driver's license. The men then left the house. About twenty minutes later, they returned and removed Adam's handcuffs.[7]

---

[7] *Couden*, 446 F.3d at 489-490.

3

In considering plaintiffs' appeal of the grant of summary judgment on their excessive force claim, the Third Circuit's opinion recites:

> Adam and Tiffany Couden state that four officers jumped on Adam, pointed guns at his head, handcuffed him, and sprayed him with mace. One of the officers was on top of Adam with his knee in Adam's back. Although the officers may have believed that Adam was an intruder at the time, this level of force was unnecessary and constitutionally excessive. There was no evidence that Adam was resisting arrest or attempting to flee, and in his affidavit he stated that he "did what [the officers] told [him] to do" because he knew he was "one against a group." The police had no reason to believe that Adam was armed or that any accomplice was present, and there were four officers available to subdue him if he became violent.[8]

The Third Circuit concluded, viewing the facts in the light most favorable to the plaintiffs, "[t]he participation of so many officers and the use of mace, several guns pointed at Adam's head, and handcuffs constituted excessive force against a cooperative and unarmed subject."[9]

With regard to the search of the Couden residence, however, the Third Circuit held the facts, again viewed in the light most favorable to the plaintiffs, demonstrated there were both the probable cause and exigent circumstances necessary for the law enforcement personnel to perform a warrantless search of the Couden residence. The relevant analysis of that issue from the Third Circuit's opinion is as follows:

> A search of a home without a warrant is presumptively unreasonable under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). There are several established exceptions to the warrant requirement, however, including exigent circumstances and consent. *Steagald v. United States*, 451 U.S. 204, 211, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981). Regardless of whether an exception applies, a warrantless search generally must be

---

[8] *Id.* at 497.
[9] *Id.*

4

supported by probable cause. *New Jersey v. T.L.O.*, 469 U.S. 325, 340, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985).

Exigent circumstances exist where "officers reasonably . . . believe that someone is in imminent danger." *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir.1996) (emphasis omitted). For example, a search may be justified based on exigent circumstances by "hot pursuit of a fleeing felon," "imminent destruction of evidence," or "the need to prevent a suspect's escape." *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990) (quoting lower court holding with approval). Defendants argue that the officers in this case reasonably believed that Tiffany Couden was in imminent danger because they saw an unknown man enter the house, and they believed him to be either a burglar or a wanted fugitive. In addition, they state that Tiffany told them that she was alone in the house, confirming their suspicion that the man was an intruder. Lastly, Pamela Couden's seemingly desperate drive away from the scene suggested some type of illicit behavior.

This is a close issue. As discussed previously, Adam Couden did not initially behave in a suspicious manner, and the vehicle parked by the road did not behave like a getaway car. Once the vehicle sped away, however, the officers were reasonable in their concern and their decision to approach the house to investigate further. Tiffany's apparent belief that no one else was home properly increased their concern. We hold that **these facts, taken together, provided both the probable cause and exigent circumstances necessary for a warrantless search of the house.**[10]

### III. DISCUSSION

As recited above, in its May 1, 2006 opinion, the Third Circuit determined that "these facts . . . provided the probable cause and exigent circumstances necessary for a warrantless search of the house."[11] Based on that determination, defendants argue that "[h]aving decided that the defendants had probable cause to enter the house and look for the burglar, it is axiomatic that the officers would also have probable cause to then

---

[10] *Id.* at 496 (emphasis added).
[11] *Id.*

5

arrest that burglar."[12] In support of their argument, defendants cite the Tenth Circuit's opinion in *Armijo v. Peterson* where that court concluded that "[i]t would be unreasonable to permit the officers to enter and search, but forbid them from briefly detaining the object of their quest," and "just as exigent circumstances permit a warrantless home entry, emergencies may justify a warrantless seizure in the home."[13]

In opposition to defendants' position, plaintiffs do not attempt to distinguish, nor even address, the *Armijo* opinion. The court agrees with defendants, in light of the Third Circuit's determination that the facts of this case provided the probable cause and exigent circumstances necessary for a warrantless search of the house by the law enforcement personnel, those facts also justified a warrantless seizure of Adam Couden. Whether the acts associated with that seizure constituted excessive force is a question to be resolved by the jury.

Plaintiffs, however, attempt to equate an unlawful seizure under the Fourth Amendment with a claim of excessive force in violation of that amendment, stating "in the same decision, the Third Circuit recognized that '[t]he use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment.'"[14] That sentence begins the Third Circuit's analysis of the excessive force allegations, *not* an unlawful seizure analysis. *Graham*, the case relied upon by the Third Circuit, considered the proper characterization of an excessive force claim. It stated that "[i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific

---

[12] D.I. 306 at 1.
[13] 301 F.3d 1065, 1073, 1074 (10th Cir. 2010).
[14] D.I. 311 at 1 (quoting *Couden*, 446 F.3d at 496).

6

constitutional right allegedly infringed by the challenged application of force."[15] The court held where:

> the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person. . . . Today we make explicit what was implicit in *Garner's* analysis, and hold that *all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.[16]

Thus, the Supreme Court was merely clarifying that an excessive force claim in the context of an arrest or investigatory stop of a free citizen was a "seizure," in quotes, to be analyzed under the Fourth Amendment, not that an excessive force claim was being equated with an *unlawful* seizure under the Fourth Amendment.[17] Indeed, there are completely different analyses for a claim alleging an unlawful seizure versus an excessive force claim, though both allege violations of the Fourth Amendment.[18]

Consequently, the court agrees with defendants. Therefore,

IT IS ORDERED that any claim raised by plaintiff Adam Couden is limited to an excessive force claim under the Fourth Amendment.

| | |
|---|---|
| December 5, 2011 | /s/ Mary Pat Thynge |
| Wilmington, Delaware | Thynge, U.S. Magistrate Judge |

---

[15] *Graham v. Connor*, 490 U.S. 386, 394 (1989).
[16] *Id.* at 394-95.
[17] As noted, the Supreme Court was considering which constitutional right was being violated with a claim of excessive force during a "seizure" of a free citizen. *See id.* at 395 n.10 (comparing excessive force under the Eighth Amendment which "'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified'" **after conviction**) (emphasis added) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).
[18] *See, e.g., Couden*, 446 F.3d at 496-97 (discussing analysis of an excessive force claim); *United States v. Smith*, 575 F.3d 308, 312-13 (3d Cir. 2009) (discussing analysis of an unlawful seizure claim).