# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAMELA A. COUDEN, et al., | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 03-369-MPT |
| SCOTT DUFFEY, et al., | : |

## MEMORANDUM ORDER

Plaintiff Paula Couden ("Couden") and six of her children filed a civil rights and tort action against defendants Scott Duffey ("Agent Duffey"), James C. Armstrong ("Officer Armstrong"), Jay Freebery ("Officer Freebery"), Liam Sullivan ("Officer Sullivan"), and several county and city entities, as well as, the United States of America. The suit arose from a series of nighttime interactions with plaintiffs and the individual defendants at the Couden home in connection with those defendants' surveillance of a different house near the Couden residence.

At the close of plaintiffs' case-in-chief, defendants moved, pursuant to Fed. R. Civ. P. 50(a), for judgment as a matter of law that the evidence is not legally sufficient to support the claims of excessive force brought by plaintiff Adam Couden ("Adam"), one of Pamela Couden's sons, against Agent Duffey, Officer Sullivan, and Officer Armstrong with regard to those defendants' actions in subduing Adam inside the Couden residence. There is no claim of excessive force by Adam against Officer Freebery. Defendants also contend the evidence is not legally sufficient to support plaintiffs' claims of unlawful seizure and excessive force with regard to Officer Armstrong approaching the Couden's vehicle, in which Pamela Couden and four of her children

were seated, with his gun drawn and his attempt to open the locked driver's side door. Defendants further contend that the evidence is not legally sufficient to support plaintiffs' claim of excessive force with regard to Officer Freebery's throwing of his flashlight at the Couden's vehicle, which broke one of the vehicle's windows, as Pamela Couden drove away from Officer Armstrong and the car was, according to Officer Freebery's testimony, heading toward him. After hearing the parties' arguments on these Rule 50 motions, the court denied Officer Freebery's motion with regard to plaintiffs' excessive force claim, denied Officer Armstrong's motion with regard to plaintiffs' unlawful seizure claim, and took the remaining motions under advisement. This order sets forth the court's conclusions with regard to defendants' other Rule 50 motions.

Rule 50(a) recites:

(1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

    (A) resolve the issue against the party; and

    (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Courts rarely grant judgment as a matter of law.[1]

---

[1] *See, e.g., Brandywine Associates v. Great West Life Assurance Co.*, Civ. A. No. 92-4918, 1993 WL 131326, at *2 (E.D. Pa. Apr. 23, 1993) ("While we recognize that [the Rule 50 standard of review] is a strict standard, we believe the case *sub judice* is the rare case where, as a matter of law, the record is deficient of that minimum quantity of evidence to support a verdict for the plaintiff."); *King v. Washington County*, 2009 WL 2998126, at *1, *3 (W.D. Pa. Sept. 15, 2009) ("The Court is cognizant of the fact that

2

> Under Rule 50(a), the court may grant judgment as a matter of law only if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). In granting judgment as a matter of law following a jury verdict, the district court must view the evidence in the light most favorable to the non-moving party, and determine whether the record contains the "'minimum quantum of evidence from which a jury might reasonably afford relief.'"

*Mosley v. Wilson*, 102 F.3d 85, 89 (3d Cir. 1996) (quoting *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 691 (3d Cir. 1993)).

**Qualified Immunity:**

Police officers, under certain circumstances, may be protected from *Bivens* and § 1983 suits by qualified immunity. The purpose of qualified immunity under Fourth Amendment claims is "to protect officers from the sometimes 'hazy border between excessive and acceptable force' and to ensure that before they are subject to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (quoting *Priester v. Riveria Beach*, 208 F.3d 919, 926 (11th Cir. 2000)). Whether qualified immunity applies requires the court to first "decide whether the facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation." *Couden v. Duffy*, 446 F.3d 483, 492 (3d Cir. 2006). If it does, then the court determines "whether the constitutional right in question was clearly established." *Saucier*, 533 U.S. at 201.

> The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

---

judgment as a matter of law is rarely granted, but finds that this matter presents a textbook case, illustrating when the grant of a motion made pursuant to Fed. R. Civ. P. 52(c)[, which parallels Rule 50(a),] is appropriate.").

3

*Saucier*, 533 U.S. at 202.

"If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity.

The Third Circuit has already determined that on the same or similar facts discussed in its 2006 opinion that this court failed, in its constitutional rights analysis, to consider facts in a light most favorable to plaintiffs. *See Couden v. Duffy*, 446 F.3d 483 (3d Cir. 2006). Certain of those facts remain in dispute. The court denies defendants' Rule 50 motion on qualified immunity.

**Excessive Force Analysis**:

1. Where excessive force is alleged, the facts must be evaluated under the totality of the circumstances. The proper test for evaluating an excessive force claims is one of objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 394, 397 (1989).

2. The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or other, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. In *Graham*, the Supreme Court recognized that in applying the objective reasonableness test "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," is unconstitutionally reasonable. *Id.* Instead, "[t]he calculus of reasonableness must embody allowance for the fact the 'police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.'" *Id.* at 396-97.

4

3. The absence of physical injury does not necessarily signify that force has not been excessive, however, it is a relevant factor under the totality analysis and the presence of physical injury is relevant to the determination. *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) (citing *Gumz v. Morrissette*, 772 F.32d 1395, 1400-01 (7th Cir. 1985)).

4. Therefore, an excessive force claim does not just involve whether extensive physical contact or injury occurred; it also requires a determination whether "force" was used.

5. Uniformly, defendants rely on *Sharrar,* in support of their motions under Rule 50(a). Although that case upheld the lower court's finding that there was insufficient evidence to present a jury on excessive force in effectuating an arrest, in its analysis the court mentioned certain cases which found the use of force to be excessive.

    a. *Black v. Stephens*, 662 F.2d 181, 184-186 (3d Cir. 1981). Although this case was analyzed under the 14th amend as applicable to 42 U.S.C. § 1983, that distinguishment is not relevant. The Third Circuit analyzed this matter post verdict after denial of Rule 50 and 59 motions, respectively motions for judgment not withstanding the verdict and a new trial. There the court sustained a verdict in favor of the plaintiffs when a plain-clothed officer brandished and pointed a firearm at the plaintiff and his wife during an investigatory stop. It was undisputed there was no basis for the plaintiff to know that the gunman was a police officer or an arrest was being effected. Here, whether Officer Armstrong identified himself either verbally or by displaying his identification, that is, his badge, is in dispute–Officer Armstrong said he did and plaintiffs in the Couden vehicle said he did not. It is not disputed that he attempted to open the

5

driver's car door.

  b. On an appeal granting summary judgment in favor of the defendants, which included the Township, certain named officers (including an officer named Armstrong–no relationship to the defendant in the instant matter) and a number of "John Doe" enforcement officers, the court considered in *Baker v. Monroe*, 50 F.3d 1186, 1193 (3d Cir. 1995), the use of guns and handcuffs. The testimony indicated that Armstrong was the senior officer in charge of executing a warrant. According to a minor plaintiff, Armstrong ran passed him into the home. While the majority of the plaintiffs were still outside, other officers pointed guns at them, pushed them to the ground and handcuffed them. There was no testimony that Armstrong personally was involved in the handcuffing or gun pointing. The court noted that the use of guns and handcuffs must be justified by the circumstances of the case requiring the court to evaluate the intrusiveness of all aspects of the incident as a whole, including the use of guns and handcuffs, the length of the detention, whether the police had any reason to feel threatened by or fear that the plaintiffs would escape, to determine whether there was a substantial invasion of the plaintiffs' personal security. Although this analysis was part of the court's determination as to whether Armstrong could be liable for the conduct of officers under his supervision, an issue not present in the instant matter, the analysis is relevant and similar to that required by this court under defendants' Rule 50 motions.

  c. *McDonald v, Haskins*, 966 F.2d 292, 294 (7th Cir. 1992) is a Seventh Circuit case referenced by the Third Circuit in distinguishing the circumstances in *Sharrar*. It involved a civil rights action for alleged excessive force for holding a gun to the head of a nine year old boy and threatening to pull the trigger during the course of

the search of his residence. The district court denied defendants' motion to dismiss under qualified immunity and the appellate court affirmed. This matter recognized the murky relationship between the *Graham* objective reasonableness standard and the inquiry under qualified immunity, that is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them without regard to their underlying intent or motivation"–an issue raised by defendants in their Rule 50 motions. In determining at the motion to dismiss stage whether excessive force had been adequately pled, the court determined it could not find the defendant officer could reasonably believe the force used in effectuating a search warrant was not excessive based on the following facts: the child was not under arrest, the officer did not merely point the gun at the child's head, but threatened to pull the trigger, the child was only 9 years old, and per the complaint, the child posed no threat to the officer or the general community–which the court noted as "the very ingredients relevant to an excessive force inquiry."

6. *Sharrar* commented on the inability of the plaintiff, who recognized the four defendant officers, to identify which were in the police car with him at the time of the alleged abuse. It then in a single statement commented there was no evidentiary basis on which to hold those defendants liable. The court's refusal to reverse the district court's grant of summary judgment on excessive force in effectuating the arrest, did not turn on whether the plaintiff could recognize the officers involved in his injury (dislocating his shoulders), but on its overall analysis of the totality of the circumstances. Specifically it noted:

> While the language and method used to effect the arrests appear to be

> more akin to the Rambo-like behavior associated with police in overdramatized B movies or TV shows than police conduct ordinarily expected in a quiet, family seaside town, we are reluctant to establish a precedent that would subject every police arrest of a group of possible violent offenders to compliance with the Marquis of Queensberry Rules of fair play. Although these police officers came close to the line, these circumstances, in totality, do not rise to a Fourth Amendment violation.

Those facts on which the Third Circuit relied were: the officers were arresting four men, after having been advised that at least one, with the assistance of others, had used a gun in a violent prior episode; there was evidence of drug involvement; and no suggestion that the suspects were required to lie down beyond the time necessary to handcuff and secure them.

Apparently, those facts were not in dispute at trial, unlike the facts regarding the use of excessive force by Officers Armstrong, Sullivan and Agent Duffey in their treatment of Adam Couden and Officer Armstrong in his approach and contact with the Coudens in their vehicle.

7. In addition to *Sharrar*, defendants rely on a number of cases to support their argument that absent an identification of which officer did what to Adam Couden, an excessive force claim cannot be submitted to the jury.

    a. *Rode v. Dellareciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988) stands for the proposition that a defendant must have personal involvement in the purported wrongs; liability cannot be based on *respondeat superior*. "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*

    b. *Taylor v. Brockenbrough*, C.A. No. 98-6419, 2001 U.S. Dist. LEXIS

8

21056 (E.D. Pa. Dec. 19, 2001). In that case, six officers were accused of excessive force and unlawful detention, however, plaintiff claimed only one officer was involved in the alleged violation of his civil rights. According to the facts, two officers approached the plaintiff and told him to stand facing a wall while one proceeded to search him. Following the search, an officer forcefully struck the plaintiff in the side and back, causing him to strike his head against the wall. The plaintiff could not identify which officer struck him. In finding that the plaintiff failed to specifically identify the police officer who engaged in the unlawful conduct, the court noted that "in order to establish a civil rights violation, those responsible for the alleged violating conduct must be specifically identified." *Id.* at *6. In finding that neither the plaintiff nor any witness could identify the "exact police officer responsible for . . . [the] beating," the court found there was no evidence to hold any of the defendants liable. The plaintiff only testified that one of the two officers at the scene of the incident searched and abused him, and thus provided no evidence to determine which one was involved. *Id.* at *7.

      c. *Munsen v. City of Philadelphia*, C.A.No. 08-5131, 2009 WL 2152280 (E.D. Pa. July 15, 2009). In that matter, plaintiff alleged a number of police officers violated his civil rights while effectuating a personal warrant. The plaintiff alleged that one or more of the officers used excessive force by pushing him against his couch, flipping him onto the floor and pinning him to the ground. He further asserted that an officer kneed him in the back, while other officers held him down. *Id.* at *1. The defendants moved for summary judgment, which was granted. In deciding summary judgment in the defendants favor, the court noted the plaintiff was unable to identify any of the individual officers involved in the excessive force violation. The plaintiff was only

able to provide vague identification of the officer involved in the couch incident and provided only an incomplete description of that officer, noting there were other officers present. Nor could the plaintiff identify the other officers as those who allegedly used excessive force against him, and failed to identify any wrongful actions on their part. *Id.* at *3. The court noted the plaintiff failed to depose the defendants to obtain further information regarding their identities or to flesh out their actions on the night in question. *Id.* at *4.

        d. *McNeil v. City of Easton*, 694 F. Supp. 2d 375 (E.D. Pa. 2010). In an amended complaint, the plaintiff raised what appeared to be five 42 U.S.C. § 1983 claims, including one for excessive force. The defendants moved for summary judgment. According to the facts, two officers responded to a domestic dispute complaint raised by a neighbor of the plaintiff. Hearing screams and loud banging, and in light of the 911 call, the officers called for back up and telephonically confirmed with their supervisor they could enter the residence without a warrant. Other officers arrived at the scene. During attempts to subdue the plaintiff, an unidentified officer kicked him in the back of the head. In granting summary judgment, the court found the plaintiff's inability to identify the alleged officer who kicked him in the head precluded an excessive force claim against all the defendants for this event.

The cases on which defendants rely are distinguishable from the instant matter. In the cases cited by defendants, the plaintiffs could not identify which officers were involved in the use of excessive force. Here, plaintiff Adam Couden and a witness, Tiffany Couden, have confirmed there were three officers involved in the subduing of Adam. Adam testified the door leading from the house to the garage abruptly opened,

and he was dragged into the kitchen hallway area by three officers and thrown to the floor and handcuffed. While on the floor, he contends two guns were pointed at his head, an officer had a knee in his back to hold him down and he felt liquid on the back of his head. Tiffany first saw her brother when he was handcuffed while lying face down on the hallway floor. She further testified that two officers on either side were holding guns to her brother's head, and had their knees in his back, while a third officer sprayed the back of Adam's head with a liquid. The four officers acknowledge being in the house or garage at sometime during the events depicted by Adam and Tiffany. All admit they were armed with handguns that evening, although all deny using their weapons in the manner Adam and Tiffany described. It is undisputed that Officer Freebery did not participate in the purported altercation with Adam, as he remained with Tiffany. Officer Armstrong admits to locating Adam in the garage and using some force to effectuate the handcuffing of Adam, including pushing him to the floor. Agent Duffey confirms he entered the Couden residence in the area where Officer Freebery and Tiffany were located and after remaining in that living area of the home for a period of time, he proceeded towards the garage. Officer Sullivan confirmed he, albeit for a short period of time, was in the garage along with Officer Armstrong and a handcuffed Adam. Defendants deny Adam and Tiffany's version of the events in the kitchen hallway.

Thus, unlike the cited cases, this is not a situation where purported excessive force was used, and there were no facts evidencing which defendants participated in the challenged conduct. Consequently, defendants' Rule 50 motions on the events involving Adam Couden are denied.

8. **Whether there was force.** Although it is not entirely clear that an issue of

whether force was used by Officer Armstrong in his approach and contact with the Couden vehicle has been argued by defendants in their Rule 50 motions, the court notes in *United States v. Waterman,* 569 F.3d 144, 146 (3d Cir. 2009) cited by defendants in support of a prior motion, where there was no actual physical force, by drawing their guns, the police made a "show of authority" which constituted a display of force. Such force was found to fall short of the physical force required under *California v. Hodari D*, 499 U.S. 621 (1991). Although *Waterman* and *Hodari D* involved analyzing seizure under the Fourth Amendment, the court stated in *Waterman* that the drawing of guns by police officers is force. Officer Armstrong's similar actions here, allegedly aiming his gun at Pamela Couden's head, combined with attempting to enter the vehicle, therefore, constituted force which the jury can evaluate in its considerations of whether that force was unconstitutionally excessive. As a result, Officer Armstrong's Rule 50 motion regarding the events involving the Couden vehicle is denied.

    9. **Use of "Mace".** Unlike the prior discussions herein, plaintiffs have present no evidence that Adam was sprayed with Mace. In his direct testimony, Adam could not remember being sprayed with anything, but just felt something on his head. He admitted never having any prior experience with either Mace or pepper spray. He further testified that when he touched the back of his head later than night, he felt a liquid that had a gritty or sandy feel. During cross examination, Adam stated he was no expert regarding the substance and did not know what it was. Adam testified he experienced no noticeable effects from the liquid on his head, except for a discoloration and the sandy feel.

    Tiffany testified observing an officer spraying her brother's head, which she

assumed was Mace. On further questioning, she admitted she had never encountered Mace, did not know what it smelled like or what its side effects were, could not confirm what the substance was, or describe the canister containing the substance. Tiffany denied either her brother or herself suffered any effects from the liquid being sprayed. Tiffany also refuted her prior affidavit (submitted in opposition to defendants' first motions for summary judgment) that all four of the officers had Mace, testifying only a single officer did. Nothing they testified to refutes the testimony of defendants' expert, Monty Jett, regarding the normal reactions experienced by individuals sprayed with the chemical agent the officers were issued. The testimony of Adam and Tiffany Couden only suggests some liquid was sprayed on Adam's head. Therefore, defendants' Rule 50 motion on the use of Mace is granted.

Dated: December 12, 2011 /s/ Mary Pat Thynge
UNITED STATES MAGISTRATE JUDGE